VERNON (CASSELS v.). See Case No. 2,-503.

≡≡≡

## Case No. 16,922.
### VERNON v. D'WOLF.
[4 Mason. 123.] 1

Circuit Court, D. Rhode Island. Nov. Term, 1825.

WILLS—CONSTRUCTION—LEGACY—PLEDGE OF SECURITY.

A by his will left B. a minor. 20,000 dollars to be invested by his executors in an institution for savings, to be paid on her marriage or arrival at age, and in the mean time the interest thereon to be paid to his wife for the maintenance of B; and he directed, that all the public stock standing in his name in the loan office at P. should remain there, and be bound to pay the 20,000 dollars, adding, that his reason for so doing was to make good any deficiency or depreciation that might take place in the savings bank. *Held,* that the whole public stock (amounting to upwards of 50,-000 dollars) was pledged as security for the principal legacy, but not for the accruing interest.

Bill in equity by the plaintiff for the due appropriation and security of a legacy left her by the last will and testament of her grandfather, Charles D'Wolf. The bill being taken pro confesso, by consent. the only question submitted by the parties was, what sort of decree the plaintiff, under the circumstances, was entitled to. The testator made his will, and afterwards annexed several codicils thereto. His second codicil. dated 26th of June, 1816, contained the following clause: "I also order and direct that in lieu of what I intended, as expressed in my will, for my dear daughter Eliza, deceased, I give and bequeathe to my granddaughter Eliza D'Wolf Vernon (the plaintiff) 20,000 dollars. to be placed in the hands of William Vernon. her father, at my decease without loss of time. the interest of which to be appropriated, or as much of the interest as is necessary, for the bringing up and education of the said Eliza D'Wolf Vernon, and to be paid her by her said father on the day of her marriage, or in case of her decease before marriage, to the said William Vernon, to have and to hold the same to his heirs and assigns for ever." On the 2d of February, 1820, the testator, by a third codicil, added the following clause: "A change of circumstances has caused me to alter my will as respects the manner in which I have given 20,000 dollars to my dear and much beloved granddaughter, Eliza D'Wolf Vernon. Instead of paying it over to her father, Mr. William Vernon, it is my will and pleasure, that all my United States stock standing in my name in the loan office in Providence, shall

1 [Reported by William P. Mason, Esq.]

remain in my name, and shall be held bound to pay the above mentioned 20,000 dollars, equal to gold or silver, until my said granddaughter shall arrive to the age of 21 years or marriage, then to be paid over to her; the interest of the above named 20,000 dollars to be paid over to my wife, as it may become due, and from the time of my decease up to the time of my said grand daughter's age of 21 or marriage, to be by my said wife laid out in the maintenance and education of my said granddaughter. I do order that at my decease my executors do deposit 20,000 dollars in the Bristol Institution for Savings, in their name, as trustees to my said grand-daughter. My intention in binding the above mentioned United States stock is to make good any deficiency or depreciation that may take place in the savings bank. I do order the overplus interest of what may be over sufficient for her said maintenance and education, to be added to the principal in said institution. It is also my will. that in case my dear grand-daughter should die before she arrives at the age of 21 or marriage, that the above mentioned 20,000 dollars go back to my sons George and Charles, or their heirs. in lieu of the said 9,000 dollars as mentioned in my second codicil." The bill charged, among other things, that the United States stock. amounting to more than 20,000 dollars, had been sold by the executors; and prayed a reinvestment and other security, &c. &c.

Upon the hearing, Whipple and Tibbets, for respondents, contended: 1. That no sum ought to be invested to make up any deficiency in the 20,000 dollars deposited in the Bristol Institution for Savings, as the stock in the loan office was paid off by the United States. and not voluntarily disposed of by the respondents: 2. But if any sum was to be reinvested for this purpose, no part of the interest arising on such invested sum ought to be appropriated to make up any deficiency in the interest on the said 20,000 dollars. as no provision was made in the will to supply any such deficiency, and it did not appear that such was the intention of the testator.

Mr. Searle, for plaintiff, contended, that the bill charged the defendants with the sale of the stock, and they admitted it by not answering. That if the stock had been paid off by the United States, the proceeds were equally pledged in the executors' hands, and ought to be placed in some safe fund. where they might be reached, if necessary, in any future event. That under the will it was apparent the testator intended the 20,000 dollars' legacy should produce, in any event. the annual interest of six per cent.; and that the stock, and the fund substituted for the stock. ought to be held to make good any deficiency in such interest.

STORY, Circuit Justice. The obvious intention of the testator was. that the United States stock held by him should. at his decease, stand bound as collateral security to make good any deficiency or depreciation

that might take place by depositing the 20,-000 dollars' legacy, given by him to the plaintiff, in the Bristol Institution for Savings. That stock has been sold by the executors; and the sale is a manifest violation of the direction of the testator that it should remain in his name, which must mean, that it should remain until the purpose of the trust was fulfilled. that is, until the legacy should become absolutely due by the arrival at age, or marriage. or death of the plaintiff. It is said by the defendants' counsel. that the sale was involuntary, as the stock was paid off by the United States; but that does not appear, and the bill charges it as a voluntary sale. Indeed a payment by the United States is a transaction wholly distinct from a sale. and in no sense to be confounded with it. But whether the transaction were a sale or payment, in my judgment. the legal result will be the same. The proceeds of the sale or payment must stand charged in the hands of the executors with the same trusts as the original stock. I shall. therefore, direct a reinvestment to be made of the whole proceeds, subject to the authority and control of this court, for the purposes of the original trust. In respect to the interest accruing from time to time upon such original stock, or any future investment of it, in the shape of dividends or otherwise, I see no reason why it should not be paid over to the executors as an unappropriated fund for the general purposes of the will. It is not in terms. nor by fair implication. pledged by the testator in aid of. or as security for. the legacy of the plaintiff.

As to the other point. that the testator intended to secure to the plaintiff an interest of six per cent. on her legacy during her minority, &c.: and that the original stock was charged with making up any deficiency of such interest, I cannot say that I perceive any such intention in the will and codicils. By the second codicil the testator bequeathed a legacy of 20,000 dollars to the plaintiff, to be placed in her father's hands, and directed so much of the interest thereof, as was necessary for that purpose, to be applied to her maintenance. But what interest was to be appropriated? Certainly not any specific interest, but such as the 20,000 dollars might or would yield upon a due investment. There is no pretence to say, that upon this clause the estate of the testator would have been bound to make up any deficiency in the interest. if it should fall short of six per cent. The obvious intent of the third codicil was not to change the amount of this legacy. but the hands, by which it was to be administered. It is to be deposited in the Bristol Institution for Savings, and the interest accruing therefrom, which certainly must mean the interest or dividends which should be declared thereon by the Bristol Institution, is to be applied to her maintenance. But the testator foresaw that there might be a deficiency or depreciation of the capital of the

20,000 dollars, in consequence of this investment, either by losses or mismanagement; and, as he intended that the plaintiff should, at all events, on her marriage or arrival at age, receive 20,000 dollars. "equal to gold or silver," he bound his United States stock as collateral security for the payment of that sum. and that only. He says nothing as to the amount of the intermediate interest, or any depreciation of it, though it is obvious that if the principal were depreciated, the interest would ordinarily share the same fate. The omission, therefore, to provide for the interest, is strong to show that he meant an ultimate security only as to the principal. And he seems to have thought that in no probable event the interest would be less than what might be necessary for the maintenance of the plaintiff. for he expressly provides for adding the surplus of the interest to the principal in the institution. Yet he has not pledged his United States stock for the payment of such surplus so added: but in terms only for the principal legacy of 20,-000 dollars.

Perceiving no clear intention of the testator that the legacy should produce six per cent. interest, or that the United States stock should be pledged for the deficiency; I am of opinion that the plaintiff is not entitled to any decree to this effect. Decree accordingly.

VERNON (LAWRENCE v.). See Case No. 8,146.

VERNON (OLIVER v.). See Case No. 10,501.

VERNON COUNTY (McKEE v.). See Case No. 8,851.

VERNON COUNTY COURT (UNITED STATES ex rel. McKEE v.). See Case No. 14,877.